**In re Alfredo V. CARLOS &
Leticia Carlos, Debtors.**

**Bankruptcy No. LA 97–31026 SB.**

United States Bankruptcy Court,
C.D. California,
Los Angeles Division.

May 20, 1998.

536

## OPINION FINDING THAT LAW FIRM HAS ENGAGED IN UNAUTHORIZED PRACTICE OF LAW

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. Introduction

This case raises the issue of whether a law firm may use a non-attorney to negotiate, on behalf of a creditor client, a reaffirmation agreement with a debtor in a chapter 7 bankruptcy case.

The court holds that, where a client hires a law firm to negotiate a contract, the negotiation of the contract constitutes the practice of law that must be performed by an appropriately licensed attorney. Thus, when a law

firm uses a non-attorney to negotiate a contract on behalf of a client of the firm, this constitutes the unauthorized practice of law. Such unauthorized practice of law occurs when a non-attorney employee of a law firm negotiates, on behalf of a creditor, the reaffirmation of a debt that may otherwise be dischargeable in a bankruptcy case.

### II. Facts

Prior to filing this bankruptcy case, debtors Alfredo and Letitia Carlos used their charge card issued by Sears, Roebuck & Co. ("Sears") to make numerous purchases, including a washing machine, a 19–inch television and a VCR. The court has previously found that the unpaid balance on the charge card as of the date of filing this bankruptcy case was unsecured. *See In re Carlos,* 215 B.R. 52, 59 (Bankr.C.D.Cal.1997).

Sears hired Liebowitz & Constantino ("L & C") to represent it in the negotiation of reaffirmation agreements with debtors who filed chapter 7 bankruptcy cases in this district. L & C represented Sears in a substantial number of such cases, including the case at bar.[1]

Because the debtors were not represented by counsel in the negotiation of the reaffirmation agreement, a hearing for approval of the agreement was required. Both debtors appeared and testified. Even though Sears would be the beneficiary of an approved reaffirmation agreement, it failed to appear at the hearing.[2]

According to the testimony of each of the debtors, Lynn Castro[3] appeared at the meeting of creditors, and approached them. Ms. Castro told them that she was a lawyer representing Sears, and that Sears was going to repossess the washing machine, television and VCR if Mr. Carlos did not agree to a

---

1. Sears subsequently terminated the L & C engagement. In place, it has hired Pachulski, Stang, Ziehl & Young (which has substituted as counsel for Sears in this case), which now represents Sears (through an affiliate law firm created for this purpose) in reaffirmation negotiations in this district.

2. Sears purported to withdraw the agreement before the hearing. The court found that Sears lacked standing to withdraw the agreement. *Carlos,* 215 B.R. at 63.

3. The court finds *infra* that the debtors were mistaken as to the identity of the employee of L & C who negotiated the reaffirmation agreement on behalf of Sears. After hearing the testimony of the parties, the court finds that Laura Griffin, not Lynn Castro, was the L & C non-attorney employee who represented Sears in the negotiation with the debtors.

reaffirmation of $780, to be paid in payments of $19 per month. The Sears representative failed to disclose that Sears intended to charge interest on the reaffirmed debt at the rate of 21.2%, that the total amount of payments would be $1995, or that it would take 8¾ years to repay the reaffirmed debt. The Sears representative also failed to make any of the other disclosures required for a valid reaffirmation agreement.[4]

A check of this court's records showed that Lynn Castro was not admitted to practice law in this court. A further check with the California State Bar disclosed that the only Lynn Castro licensed to practice law in California had her office in Walnut Creek, a suburb of Oakland. In consequence, the court formed a suspicion that the person who appeared for L & C to negotiate the reaffirmation agreement on behalf of Sears was not an attorney licensed to practice law. In consequence, it appeared that L & C had engaged in the unauthorized practice of law by sending a non-attorney to negotiate the reaffirmation agreement.

To permit L & C to be heard on this issue, the court issued an order to show cause. At the hearing Laurie Griffin appeared and testified that it was she who usually appeared at meetings of creditors to negotiate reaffirmation agreements for Sears. While she did not recall the Castro case, she testified that the notes for this reaffirmation agreement were in her handwriting. Although she holds a law degree from Western State University School of Law, Ms. Griffin admitted that she was not licensed to practice law in California or in this court. Lynn Castro did not appear at the hearing, but submitted a declaration that she was a legal secretary at

L & C, and that she did not attend meetings of creditors.

Ms. Griffin testified as to her standard procedure at a meeting of creditors. Where a debtor was not represented by counsel, she would state on the record that she would meet afterwards with the debtor about the Sears debt. She would then meet with the debtor in the courtyard outside the building where the creditor meeting was held to negotiate a reaffirmation agreement. Her compensation was a commission based on the amount of debt for which she obtained reaffirmations.[5]

Ms. Griffin testified that she never told debtors that she was an attorney. However, if a debtor asked for identification, Ms. Griffin gave them a business card which stated, "Law Offices, Liebowitz & Constantino, a Professional Corporation, Laurie Griffin, Account Representative."

The court has observed the witnesses who testified, heard their testimony and evaluated their credibility. The court finds that the testimony of the debtors is credible in all respects, except that they misidentified the person who represented Sears in the reaffirmation negotiations. The court finds that it was Laurie Griffin, and not Lynn Castro, who represented Sears. The court finds that Ms. Griffin falsely represented to the debtors that she was an attorney, and that she failed to make the disclosures required for a reaffirmation agreement that can be approved by the court. *See Kamps*, 217 B.R. 836 *passim* (Bankr.C.D.Cal.1998); *see also Carlos*, 215 B.R. at 57–59.

### III. Analysis

■ Reaffirmation agreements are provided for solely under Bankruptcy Code § 524.

---

4. For the disclosures required to permit the court to make the findings required to approve a reaffirmation agreement, *see In re Kamps*, 217 B.R. 836 *passim* (Bankr.C.D.Cal.1998); *see also Carlos*, 215 B.R. at 57–59.

5. It appears that this method of compensation violates the rule that prohibits an attorney from splitting fees with an non-attorney. *See* Rule 1–320(A) of the California Rules of Professional Conduct; *Gassman v. State Bar*, 18 Cal.3d 125, 130, 132 Cal.Rptr. 675, 553 P.2d 1147 (1976) (upholding discipline of lawyer for entering into agreement to pay paralegal 20% of the attorney's

legal fee for cases on which paralegal worked). In *Cain v. Burns*, 131 Cal.App.2d 439, 441–42, 280 P.2d 888 (1st Dist.1955), the court of appeal held that an agreement between a private investigator and an attorney to pay the investigator one-third of attorney's legal fee in certain cases violated the rule against splitting fees, because the compensation was determined without regard to the work done, the time consumed or the difficulties encountered.

However, the court makes no ruling on this issue, because it was not raised in the court's order to show cause.

Any reaffirmation agreement that does not meet the requirements of this statutory provision is illegal, and a violation of the discharge provisions of section 524.

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure specifies whether a creditor must be represented by an attorney to negotiate such an agreement. More broadly, the Bankruptcy Code is generally silent on the subject of whether a creditor (apart from an individual [6]) must be represented by an attorney in a bankruptcy case. There are two possible sources of authority requiring such representation by an attorney: court rules requiring that a party in interest (other than an individual) be represented by counsel, and state law prohibiting an attorney from assisting in the practice of law without a license.

## A. Appearance by Attorney

■ Local federal court rules generally require that all parties (except individuals) who appear in court be represented by counsel. Local Rule 102(7)* of this court is generally in accord: it prohibits a corporation, partnership or unincorporated association from filing a petition or otherwise appearing *pro se* in any bankruptcy case or proceeding.[7]

However, the negotiation of a reaffirmation agreement outside the office of the United States Trustee does not involve an appearance in the case, within the meaning of Rule 102(7). This rule only applies to appearances in court, and signing papers on behalf of a client that are filed with the court. Thus the rule requiring that a non-individual be represented by counsel in court is inapplicable to this case.

## B. Unauthorized Practice of Law

All states regulate the practice of law, and require that a person be licensed in order to practice law. In most circumstances, the prerequisites for a license to practice law include completing an undergraduate college degree and a graduate degree in law, and passing the state's bar examination. *See, e.g.,* CAL. BUS. & PROF.CODE § 6060 (West 1998).

### 1. Ms. Griffin's Practice of Law

■ California law does not define what constitutes the practice of law. The California Supreme Court has stated:

the practice of law ... includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured....

*Crawford v. State Bar,* 54 Cal.2d 659, 667, 7 Cal.Rptr. 746, 355 P.2d 490 (1960). Legal representation may include making court appearances, giving legal advice, signing legal documents, and evaluating the legal rights of a client. CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 16.3.2 (1986).

This broad definition includes many services that may properly be performed by laymen, such as accountants, title companies or brokers. In California a contract need not be negotiated by an attorney. Indeed, many contracts are negotiated without the assistance of counsel. This court does not propose to change this well-established mode of doing business in California.

The situation is different, however, when a client hires an attorney to perform such services. Where a client hires an attorney, the representation of the client's interests normally constitutes the practice of law. The

---

**6.** An individual has a statutory right to represent himself or herself in federal civil litigation. 28 U.S.C.A. § 1654 (West 1994).

* Now Rule 2090–1.

**7.** Local Rule 102(7) recognizes three exceptions to this rule: without representation by counsel, a non-individual may (1) file a proof of claim, (2) file or appear in support of an application for professional compensation, or (3) file a reaffirmation agreement. Local Bankruptcy Rule 102(7), Central District of California.

In addition, several judicial opinions have held that a creditor may send a non-attorney to repre-

sent it at a meeting of creditors pursuant to Bankruptcy Code § 341. *See, e.g., State Unauthorized Practice of Law Comm. v. Paul Mason & Assoc.,* 46 F.3d 469, 472 (5th Cir.1995); *In re Clemmons,* 151 B.R. 860, 862 (Bankr.M.D.Tenn. 1993); *In re Kincaid,* 146 B.R. 387, 391 (Bankr. W.D.Tenn.1992); *In re Messier,* 144 B.R. 617, 619 (Bankr.D.R.I.1992); *In re Gravitt,* 1991 WL 497770 (Bankr.E.D.Ky.1991); *but see In re Maloney,* 209 B.R. 844, 847 (Bankr.M.D.Pa.1997) (holding that Pennsylvania law prohibits a creditor from appearing at a meeting of creditors through a non-attorney).

client expects and is entitled to the expertise of an attorney to assure that the client's legal interests are protected and advanced according to the standards of law practice in the community. *Crawford*, 54 Cal.2d at 667–68, 7 Cal.Rptr. 746, 355 P.2d 490. The communications between the attorney and the client are normally protected by the attorney-client privilege.[8] *See* CALIFORNIA EVIDENCE CODE §§ 950–62 (West 1998). Furthermore, the work of the attorney (including that of support personnel under the supervision of the attorney) is protected under the work product doctrine. *See* FED.R.CIV.P. 26(b); FED. R.BANKR.P. 7026.

There are many tasks in a law firm that a non-attorney may appropriately carry out. Legal secretaries have traditionally performed typing, filing and other clerical functions. Support personnel often conduct ministerial tasks where they interface with the public, with clients or with other counsel, such as the delivery and pickup of papers, and the ordering and picking up of supplies. Paralegals have been used to a great extent in more recent years to do document analysis and control, and a number of other functions that require some training and expertise (but not all of the qualifications of an attorney). *See generally* WOLFRAM, *supra*, at § 16.3.2. In addition, law firms sometimes hire professionals such as economists and accountants to assist in the representation of client interests. This court's decision reflects no disapproval of such conduct.

■ Such work by non-attorneys in a law firm must be preparatory in nature. It may include research, investigation of details, the assemblage of data or other necessary information, and other work that assists the attorney in carrying out the legal representation of a client. *Crawford*, 54 Cal.2d at 668, 7 Cal.Rptr. 746, 355 P.2d 490; Formal Opinion

No. 94–002, Orange County Bar Association (1994). The work must be supervised by an attorney. Formal Opinion No. 94–002. Furthermore, the work must become or be merged into the work of the attorney, so that it becomes the attorney's work product. *Crawford*, 54 Cal.2d at 668, 7 Cal.Rptr. 746, 355 P.2d 490. If the work of the non-attorney employee of a law firm stands on its own, such work constitutes the unauthorized practice of law. *Id.*

■ The court holds that, where a law firm negotiates a contract on behalf of a client, this conduct constitutes the practice of law. *Id.* at 667, 7 Cal.Rptr. 746, 355 P.2d 490. In consequence, an attorney associated with the firm who is licensed to practice law in the relevant jurisdiction must conduct such negotiation on behalf of the client.[9] An attorney may not delegate such functions to a non-attorney.

The negotiation of the reaffirmation agreement in this case violated this rule. It was negotiated in its entirety by Ms. Griffin, with no supervision by an attorney. It stands alone as her work product, and not the work product of an attorney. While it was reviewed by an attorney, no attorney carried out the negotiations with the debtors. This negotiation constituted the unauthorized practice of law by a non-attorney.

## 2. Unauthorized Practice by L & C

■ The conduct of attorneys with respect to the unauthorized practice of law is regulated by Rule 1–300(A) of the California Rules of Professional Conduct, which provides:

A member shall not aid any person or entity in the unauthorized practice of law.

A willful violation of this rule is a disciplinary offense. *Id.*, Rule 1–100(A); *cf.* CAL. BUS. & PROF.CODE § 6077 (West 1998) (state bar has power to discipline members for wilful breach of Rules of Professional Conduct, or

---

8. Sears has asserted the attorney-client privilege to protect most of its communications with L & C in this case, and the court has found this privilege to be applicable.

9. *See, e.g., Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal.4th 119, 949 P.2d 1, 70 Cal.Rptr.2d 304 (1997) (holding that a New

York law firm with no attorneys licensed to practice law in California engaged in unauthorized practice of law in California, where it performed legal services in California for a California-based client under a fee agreement stipulating that it was governed by California law).

to recommend suspension by the California Supreme Court). Such conduct is willful when the attorney has acted purposely: i.e., the attorney knew what the attorney was doing (or not doing), and intended to commit (or abstain from committing) the act. *Abeles v. State Bar,* 9 Cal.3d 603, 610, 108 Cal.Rptr. 359, 510 P.2d 719 (1973).

An attorney violates this rule when the attorney causes a non-attorney to engage in conduct that violates the rule prohibiting the practice of law without a license. In *Crawford,* for example, the California Supreme Court imposed public reproval on an attorney for permitting his father to continue to conduct law practice at the firm's office after the father's disbarment as an attorney.

By using a non-attorney to negotiate the reaffirmation agreement with Alfredo Carlos, L & C participated in the unauthorized practice of law prohibited by CALIFORNIA BUS. & PROF.CODE § 6126. This conduct was wilful, within the meaning of the California Rules of Professional Conduct. In addition, L & C aided its non-attorney employee Laurie Griffin in her unauthorized practice of law, in violation of Rule 1–300(A) of the California Rules of Professional Conduct.

## C. Sears Responsibility

■ According to documents provided to the court, Sears was aware that L & C might use non-attorneys to appear at the meeting of creditors on its behalf. However, this does not appear to constitute culpable conduct on the part of Sears.

## D. Amount of Sanctions

■ In determining the appropriate amount of sanctions to impose on L & C in consequence of its violation of the California Rules of Professional Conduct, the court must weigh the gravity of the offense, and consider any aggravating or mitigating circumstances.

Participating in and assisting in the unauthorized practice of law is an offense of some seriousness. In this case the offense is aggravated by the fact that this case is an instance of a pattern of conduct that has occurred in many cases over a substantial period of time. Ms. Griffin testified as to her practice in negotiating reaffirmation agreements with debtors. In mitigation, the court has no evidence that she represented to other debtors that she was an attorney acting on behalf of Sears.

Giving due weight to these factors, the court concludes that L & C should be sanctioned in the amount of $10,000 for its participation and assistance in the unauthorized practice of law in this case.

## IV. Conclusion

The court concludes that L & C engaged in the unauthorized practice of law by using a non-attorney to negotiate the reaffirmation agreement with Mr. Carlos, and that it assisted its non-attorney employee in her unauthorized practice of law. This is sanctionable conduct.

The court imposes sanctions on L & C in the amount of $10,000. This amount shall be paid into the registry of the court no more than 60 days from the date of entry of this opinion.